LILLIAN L. HOLDER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Holder v. Commissioner
Docket No. 4227-89
United States Tax Court
T.C. Memo 1991-154; 1991 Tax Ct. Memo LEXIS 173; 61 T.C.M. (CCH) 2354; T.C.M. (RIA) 91154; April 4, 1991, Filed *173 Decision will be entered for the respondent. Lee E. Karavitis, for the petitioner. Bruce A. Anderson, for the respondent. FAY, Judge. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in Federal income tax for 1980, 1981, and 1982 in the amounts of $ 2,297.47, $ 3,547.00, and $ 11,439.98, respectively. The issues for decision are (1) whether the statute of limitations pursuant to section 6501(a) [1] bars assessment for the tax years in issue, and (2) whether petitioner is entitled to relief from liability under section 6013(e), the innocent spouse provision. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Lillian L. Holder (hereafter petitioner) *174 resided in Casper, Wyoming, at the time the petition in this case was filed. During the years in issue, petitioner, a college graduate in nursing, was employed as an administrator of a nursing home. At some time prior to the years in issue, petitioner had been employed as a secretary whose responsibilities included bookkeeping tasks. Petitioner and William L. Holder (hereafter Mr. Holder) married in 1964 and remained married during the years in issue. Petitioner and Mr. Holder divorced in 1985; however, they experienced marital difficulties two or three years prior to their divorce. While married, petitioner and Mr. Holder maintained separate checking accounts, although Mr. Holder's checking account was in the names of both petitioner and Mr. Holder. Petitioner would deposit her earnings in her account and would use these funds to pay for food and other expenses. Mr. Holder would deposit his income into his account, and, while he was supposed to pay for the utilities and the home mortgage, they went unpaid on a fairly consistent basis. Mr. Holder reconciled his own checking account, and petitioner did not review Mr. Holder's checks or bank statements. Other than household *175 expenses, petitioner did not know how Mr. Holder spent his money. However, petitioner never made a request to review Mr. Holder's canceled checks or bank statements. During each of the years in issue, petitioner and Mr. Holder filed joint Federal income tax returns. Mr. Holder made all of the entries on the returns. Petitioner participated in the preparation of the returns only in that she provided Mr. Holder with her Forms W-2, receipts, and canceled checks. Prior to signing, petitioner reviewed each of the joint returns for the years in issue for 15-30 minutes. Specifically, petitioner checked to make sure that her W-2 amount was properly entered. In this regard, petitioner determined whether Mr. Holder's salary together with her own equaled the amount entered under "Wages, Salaries, Tips, etc." on the return. Petitioner also checked to see whether the deductions were appropriate, making sure the items represented by the canceled checks and receipts petitioner gave to Mr. Holder were included. Finally, petitioner looked at the amount of tax due or refund indicated on the return. From this review, petitioner noticed that certain lines such as total income, adjusted gross *176 income, total itemized deductions, taxable income, and tax liability/refund were filled in at the time she signed the returns. In 1981, the Audit Division of the Internal Revenue Service examined petitioner and Mr. Holder's joint 1980 Federal income tax return. As a result of the examination, Mr. Holder signed and submitted Form 1902-B agreeing to the examination changes. Attached to this Form 1902-B was a letter written by Mr. Holder stating that petitioner refused to sign the Form 1902-B. As to whether petitioner actually knew of the examination of the 1980 joint return, the testimony conflicts. Mr. Holder stated that he told petitioner about the examination. Petitioner denies knowledge of the examination. Earlier, petitioner and Mr. Holder's joint 1979 Federal income tax return had been examined. Petitioner did have knowledge of this earlier examination. In October 1983, petitioner's employer contacted petitioner to inform petitioner that her paycheck was being garnisheed by the Internal Revenue Service (hereafter IRS). Petitioner borrowed $ 1,500 from her mother and paid the tax to avoid garnishment. Mr. Holder claims to have reimbursed this amount to petitioner. One *177 day in August or September 1983, Mr. Holder left his briefcase home. Petitioner opened Mr. Holder's briefcase and reviewed copies of the joint returns Mr. Holder carried in his briefcase. Petitioner, through her attorney, contacted the IRS and reported that the joint returns for the years in issue might contain intentional errors and alterations caused by Mr. Holder. As a result, the IRS undertook a joint civil and criminal examination of Mr. Holder. Mr. Holder waived indictment and pled guilty to two counts of subscribing to false returns for tax years 1981 and 1982. Mr. Holder received a suspended prison sentence and was placed on probation. Subsequent to his guilty plea, Mr. Holder executed Form 4549, agreeing to civil liability for taxes and section 6653(b) fraud additions for tax years 1980, 1981, and 1982. On December 9, 1988, respondent issued a notice of deficiency to petitioner for years 1980, 1981, and 1982. As respondent's witness, Mr. Holder admitted that he prepared the 1980, 1981, and 1982 joint Federal income tax returns with knowledge that they contained numerous false or fraudulent items and with the intent to evade the payment of Federal income tax. For *178 example, on the 1980 joint return, Mr. Holder took credits for a political contribution and residential energy improvements when no such amounts were actually paid. On the 1980 and 1982 joint returns, Mr. Holder took deductions for eyeglasses and a hearing aid when no such items were actually purchased. On the 1980, 1981, and 1982 joint returns, Mr. Holder took deductions for medicine and dentures when no such items were actually purchased. On the 1980, 1981, and 1982 joint returns, Mr. Holder took substantial deductions for charitable contributions when only $ 25 was actually contributed. For the 1980 joint return, Mr. Holder obtained a blank form titled "record of contributions" from a church he attended. Mr. Holder completed this form by listing numerous fictitious contributions totaling $ 2,750. Mr. Holder submitted this false record of contributions to the IRS. Finally, on the 1981 and 1982 joint returns, Mr. Holder took exemptions for a fictitious person, and on the 1980, 1981, and 1982 joint returns, Mr. Holder took Schedule C losses for a fictitious business. OPINION Section 6501(a) provides a three-year statute of limitations for assessment of tax. Section 6501(c) *179 lists exceptions to this three-year general rule. Section 6501(c)(1) provides: "False return. -- In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed * * * at any time." The burden of proving fraud is placed upon respondent by statute. Sec. 7454(a). To meet his burden, respondent must establish fraud by clear and convincing evidence. Rule 142(b). While conceding the 1982 joint return is fraudulent, petitioner argues that respondent has not met his burden of proving fraudulent returns for 1980 and 1981. Based on this premise, petitioner further argues that since respondent's notice of deficiency was issued after the three-year statute of limitations had run, section 6501(a) bars assessment for those years. We conclude, however, that respondent has proven by clear and convincing evidence that the 1980 and 1981 joint returns are fraudulent. Mr. Holder testified that he prepared the joint returns and knowingly made numerous attempts to evade the payment of Federal income tax. Mr. Holder took deductions and credits for items which were never paid. He submitted a false document to the IRS. He took an exemption for a fictitious *180 person and deductions for the Schedule C losses of a fictitious business. Petitioner argues that, even if the returns are fraudulent, it was Mr. Holder's fraud, not petitioner's fraud, and, therefore, this Court should hold that section 6501(a) bars assessment as to petitioner. That argument, however, is contrary to ; see also , affd. . While petitioner attempts to distinguish Vannaman from the facts in this case, we are not persuaded by those arguments. Next, petitioner argues that assessment should be barred with respect to the deficiency not attributable to fraud. As to the years at issue, this argument is without merit. When a return is any part fraudulent, "the tax may be assessed * * * at any time." , affg. ; see also . Finally, petitioner argues that, even if section 6501(a) does not bar assessment of the deficiency *181 against petitioner, petitioner is entitled to relief from liability under section 6013(e), the innocent spouse provision. The relevant parts of section 6013(e) provide: (e) Spouse Relieved of Liability in Certain Cases. -- [2]
(1) In general. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) *182 for such taxable year to the extent such liability is attributable to such substantial understatement. (2) Grossly erroneous items. -- For purposes of this subsection, the term "grossly erroneous items" means, with respect to any spouse -- * * * (B) any claim of a deduction, credit * * * by such spouse in an amount for which there is no basis in fact or law. * * * (4) Understatement must exceed specified percentage of spouse's income. -- (A) Adjusted gross income of $ 20,000 or less. -- If the spouse's adjusted gross income for the preadjustment year is $ 20,000 or less, this subsection shall apply only if the liability described in paragraph (1) is greater than 10 percent of such adjusted gross income. (B) Adjusted gross income of more than $ 20,000. -- If the spouse's adjusted gross income for the preadjustment year is more than $ 20,000, subparagraph (A) shall be applied by substituting "25 percent" for "10 percent". (C) Preadjustment year. -- For purposes of this paragraph, the term "preadjustment year" means the most recent taxable year of the spouse ending before the date the deficiency notice is mailed.
Petitioner bears the burden of establishing each *183 element in section 6013(e). . The failure to meet any element precludes an individual from qualifying as an innocent spouse. , affg. . In this case, the preadjustment year is 1987. Petitioner's adjusted gross income in 1987 is $ 37,839. Thus, the section 6013(e)(4)(B) threshold amount is $ 9,460 ($ 37,839 x .25). Consequently, even assuming the entire understatement in the notice of deficiency is attributable to section 6013(e)(2)B) grossly erroneous items, petitioner does not meet the section 6013(e)(4)(B) threshold amount in 1980 and 1981: 1980 1981 Deficiency per notice
$ 2,297
$ 3,547
Interest [3]
2,766
4,173
Total
5,063
7,720
Sec. 6013(e)(4)(B) amount
$ 9,460
$ 9,460
*184 Therefore, petitioner cannot qualify as an innocent spouse in 1980 and 1981. In her brief, petitioner argues that, prior to the mailing of the notice of deficiency, she paid approximately $ 1,500 under the threat of garnishment. Although citing no authority, petitioner argues that this $ 1,500 should be added back to determine whether the section 6013(e)(4)(B) threshold amount has been satisfied. We disagree. Even assuming petitioner was not reimbursed by Mr. Holder for this amount, petitioner did not prove that this $ 1,500 was attributable to a grossly erroneous item. Moreover, even if the $ 1,500 payment is added back for either 1980 or 1981, petitioner still does not meet the section 6013(e)(4)(B) threshold amount in either of those years. As for 1982, petitioner does meet the section 6013(e)(4)(B) threshold amount. However, petitioner has failed to prove that in signing the 1982 joint return she did not know or have reason to know of the substantial understatement pursuant to section 6013(e)(1)(C). At the time she signed the 1982 joint return, petitioner was aware of circumstances that should have led her to conclude that further investigation was warranted. Petitioner, *185 who is a college graduate in nursing and had some bookkeeping experience, had knowledge of the examination of the 1979 joint return. Furthermore, Mr. Holder stated that he told petitioner about the examination of the 1980 joint return. While petitioner denies knowledge of that examination and we are left with this conflicting testimony, we conclude that petitioner failed to carry her burden of persuasion. Finally, petitioner was aware that Mr. Holder was delinquent in paying his bills "on a fairly consistent basis." Petitioner testified that she did review the 1982 joint return 15-30 minutes prior to signing. Petitioner claims that any increased scrutiny would have been futile because Mr. Holder added the fictitious items after she signed the 1982 joint return. We conclude, however, that the 1982 joint return was not materially altered after petitioner signed it. The subsequent inclusion by Mr. Holder of numerous fictitious items normally would require alteration of the line items petitioner testified were complete at the time she signed the 1982 joint return. [4]
*186 Respondent's expert testified that, with regard to the 1982 joint return, no overwriting or erasure marks were found. Respondent's expert also testified that no traces of erasable ink or pencil marks were found on any of the returns. Finally, this is not a case dealing with complex tax issues hidden in the deep recesses of a tax return. A cursory glance by a reasonably prudent taxpayer in petitioner's circumstances would detect many of the items involved. The remainder would be detected with minimal investigation. However, after she reviewed the 1982 joint return, petitioner made no attempt to determine whether any of the items in issue were real. Consequently, we conclude petitioner did not meet her burden with regard to the knowledge element under section 6013(e)(1)(C). Since petitioner did not meet her burden of proof with regard to one of the elements of the innocent spouse provision, petitioner cannot qualify as an innocent spouse for 1982. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The Tax Reform Act of 1984, Pub. L. No. 98-369, sec. 424(a), 98 Stat. 494, 801, retroactively revised the innocent spouse provision as to all open years to which the Internal Revenue Code of 1954 applies.↩
3. Citing , respondent calculated interest through the date the notice of deficiency was mailed. Petitioner did not suggest any other method.↩
4. We recognize that it may be possible to add fictitious items in such a way so as to avoid alteration of the line items petitioner testified were complete at the time she signed the 1982 joint return. Based on the record, however, we cannot conclude that occurred.↩